```
              UNITED STATES DISTRICT COURT
                       FOR THE
                  DISTRICT OF VERMONT


Wells Fargo Bank, N.A.,       :
           Plaintiff,         :
                              :
      v.                      :     File No. 1:07-CV-169
                              :
Howard M. Sinnott, II,        :
Janet M. Sinnott, United      :
States Department of          :
Justice, and Occupants        :
residing at 20 Monument       :
Ave., Bennington, Vermont,    :
           Defendants.        :
```

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 19 and 28)

Plaintiff Wells Fargo Bank, N.A. initiated this action for foreclosure in state court.  The United States Department of Justice, a lienholder on the property in question, removed the case to this Court.  Pending before the Court are Wells Fargo's motion for summary judgment and defendant Howard Sinnott's motion to compel discovery.  For the reasons set forth below, I recommend that the motion for summary judgment be DENIED, and DENY the motion to compel.

Factual Background

In 1986, Defendants Howard and Janet Sinnott purchased a home in Bennington, Vermont.  In 1993, they

executed a mortgage and promissory note in the amount of $100,000.  The mortgagee at the time was Kittredge Mortgage Corporation.  The note and mortgage were transferred multiple times over the next several years.

In a letter dated February 1, 2007, the Sinnotts were informed that the servicing of their loan was to be transferred to plaintiff Wells Fargo Bank, N.A. ("Wells Fargo" or "the bank") effective February 16, 2007.  While Wells Fargo assumed servicing responsibility at that time, it was not assigned the note and mortgage until July 26, 2007.

In February or March 2007, shortly after Wells Fargo began servicing the loan, the Sinnotts were notified in writing that their monthly mortgage payment would rise from $716.42 to $2,537.77 to make up for an escrow shortage.  The Sinnotts did not pay the full amount due, and in a letter dated May 21, 2007, Wells Fargo notified them that their loan was in default.  The note and mortgage were subsequently assigned to Wells Fargo, and on or about August 1, 2007, attorneys for Wells Fargo brought this action for foreclosure in state court.  The case is in federal court because the United States, as a

lienholder on the property, filed a notice of removal. See 28 U.S.C. § 1444 (permitting removal when United States is named as defendant in foreclosure action).

In response to the complaint, the Sinnotts have filed a verified answer and counterclaim alleging, *inter alia*, that Wells Fargo should have known that they could not afford the payment increase. Other than the escrow shortage, the Sinnotts were current on their payments as of February 2007.

The Sinnotts' counterclaim attests that after receiving notification of the payment increase, Howard Sinnott sent in his regular April payment in the amount of $716.42. He included with the payment a letter proposing a modification and extension agreement on the escrow balance, and a request that his payment be applied to the principal and interest due on his loan. Wells Fargo did not initially respond to the letter, and applied the payment to the outstanding escrow balance. After Sinnott sent a second letter, he and his wife received a letter from Wells Fargo informing them that any payments sent would be applied to the escrow first.

The counterclaim further alleges that in May 2007,

the Sinnotts received a form from Wells Fargo's Loss Mitigation Department for completion "if we wished to have them consider a work-out agreement." The Sinnotts returned the completed form in early June.

Meanwhile, the Sinnotts claim, they had arranged to refinance their home in order to pay off Wells Fargo and satisfy a federal restitution lien. Because criminal proceedings were pending against Howard Sinnott, he needed to file a motion with the Court before he could get approval for the refinancing. He reportedly filed his motion in July 2007.

When Judge Murtha set an expedited date for the motion, Sinnott contacted Wells Fargo by phone and was allegedly told on July 18, 2007 that a workout proposal would be forthcoming in 30 to 45 days. Based upon this representation, Sinnott asked for a continuance on the motion "since the United States Attorney's office wanted more time to be able to make an offer to settle the matter and allow the refinance to go forward." (Paper 21 at 3).

Sinnott claims that he was "stunned" when he received the foreclosure notice in August 2007, and that

he immediately called Wells Fargo's Loss Mitigation Department.  <u>Id.</u>  He was told that his file had not yet been opened, and was not given any time frame for a response.  He claims that "by now the lending conditions had changed, and the existence of the foreclosure action lowered our credit scores so much that now the refinance became impossible and our motion before his court for approval was withdrawn."  <u>Id.</u>

The Sinnotts present two "affirmative defenses and counterclaims."  First, they submit that because Wells Fargo was not assigned the mortgage until July 2007, the bank's representations prior to that time about being the holder of the mortgage were false.  They therefore argue that any action taken against them prior to July 2007 was taken without legal authority.

The Sinnotts' second claim is that Howard Sinnott relied to his detriment when the bank told him that it would consider a workout.  Although the harm he allegedly suffered is not specifically stated, it may include his inability to obtain refinancing.  The gist of the second counterclaim is bad faith, alleging that Wells Fargo's "course of conduct would appear to indicate the

plaintiff's intent from the moment of acquisition to institute foreclosure, without according defendants a reasonable opportunity to avoid the loss of their home." (Paper 10 at 4).

In an effort to pursue these claims, Howard Sinnott has served Wells Fargo with a discovery request.  As he explains in his response to the summary judgment motion, "[w]e have a right to know what Plaintiff knew when they acted as they did, and whether they acted in good faith." Wells Fargo has not responded to the request, arguing that it is premature and that the Sinnotts' claims do not constitute defenses to foreclosure.  Howard Sinnott has moved to compel a response to his request.

## Discussion

### I. Summary Judgment Standard

Summary judgment should be granted only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party has the initial burden of demonstrating that there is no genuine issue of material fact.  See Marvel Characters, Inc. v. Simon, 310 F.3d

280, 286 (2d Cir. 2002); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (stating that movant may meet burden by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim."). Once the movant satisfies this burden, the non-moving party must respond by setting forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In determining whether summary judgment is appropriate, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004).

II.  Foreclosure Action

The facts underlying Wells Fargo's foreclosure action are undisputed. The Sinnotts are in default under the terms of the note and mortgage and have not cured the default. There is no claim that the amounts claimed are inaccurate, or that payments have been misapplied. The Sinnotts sought to negotiate with the bank, but the legal foreclosure process outpaced the informal workout process

and the Sinnotts are now facing the possibility of a judgment against them and, ultimately, the loss of their home.

In Vermont, "foreclosure actions are equitable in nature and therefore it is proper for the court to weigh the equities of the situation." Merchants Bank v. Lambert, 151 Vt. 204, 206 (1989). Furthermore, if the Sinnotts are able to show damages that exceed the amount due on the note, they "cannot be held in default on the note." Retrovest Assocs., Inc. v. Bryant, 153 Vt. 493, 500 (Vt. 1990). Accordingly, the Vermont Supreme Court has endorsed consolidation of a foreclosure judgment with all claims for damages against the mortgagee. Id.

In this case, the Sinnotts have not yet had an opportunity to fully present their case with respect to their counterclaims. Wells Fargo argues, without citation, that even if meritorious, the counterclaims do not constitute valid defenses to foreclosure. Vermont case law, however, strongly suggests that judgment on a foreclosure claim is premature as long as counterclaims are pending against the foreclosing party and there is a chance that the damages will exceed the amount due. Id.

Wells Fargo has not presented any arguments with respect to the merits of the Sinnotts' counterclaims. Therefore, the Court will not offer any opinion as to the strength of those claims. So long as counterclaims are pending, and there is a plausibility of damages against Wells Fargo in excess of the amount due on the note, a judgment of foreclosure is premature. For these reasons, I recommend that the motion for summary judgment be DENIED.

III.  Motion to Compel

Wells Fargo properly argues that Howard Sinnott's motion to compel is premature under the Local Rules. If this Report and Recommendation is adopted by the Court, I recommend that the Court allow the parties 30 days in which to submit a discovery schedule pursuant to Local Rule 26.1. Responses to Sinnott's request for production of documents shall be due as set forth in Local Rule 33.1.

Conclusion

For the reasons set forth above, I recommend that Wells Fargo's motion for summary judgment (Paper 19) be DENIED. The Sinnotts' motion to compel (Paper 28) is

also DENIED.

Dated at Burlington, in the District of Vermont, this 29th day of January, 2008.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).