UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

WELLS FARGO BANK, N.A.,     )
     )
    Plaintiff,     )
     )
    v.     )
     )
HOWARD M. SINNOTT, II,     )    Docket No. 2:07-cv-169
JANET M. SINNOTT, UNITED     )
STATES DEPARTMENT OF JUSTICE     )
and OCCUPANTS RESIDING AT     )
20 MONUMENT AVENUE,     )
BENNINGTON, VERMONT     )
     )
    Defendants     )

## MOTION FOR SUMMARY JUDGMENT

Defendants Howard M. Sinnott, II and Janet M. Sinnott, both acting pro-se hereby

moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for an Order granting

defendants summary judgment dismissing the Complaint of Foreclosure and awarding

judgment to defendants on their Counterclaims on the issue of liability and ordering a

trial to determine the damages to be awarded on such Counterclaims.

## MEMORANDUM

### FACTS

The facts of this case are set forth in the annexed Statement of Undisputed Facts.

### PROCEDURAL HISTORY OF THE CASE

This litigation was commenced by Plaintiff on or about August 1, 2007 by service

of a Summons and Complaint (Exhibit 1 less exhibits) in the Bennington Superior Court.

The United States removed this matter to this Court on August 7, 2007. (Exhibit 2)

Defendant United States interposed an Answer on August 9, 2007. (Exhibit 3) and Defendants Howard and Janet Sinnott interposed an Amended Answer and Counterclaims on August 24, 2007 (Exhibit 4). Plaintiff interposed a Reply to the Counterclaims of defendants on September 13, 2007. (Exhibit 5)

Plaintiff filed a Motion for Summary Judgment. After a hearing held before then Magistrate Neidermeier, the Magistrate Judge recommended that such motion be denied. (Exhibit 6). The Plaintiff sought to overturn that recommendation, but such decision was affirmed by Judge Sessions. (Exhibit 7)

Currently there is an existing revised Scheduling Order (Exhibit 8), to which discovery has been conducted by all parties that has set a deadline of April 17, 2009 for any Motions for Summary Judgment to be filed.

This Motion follows.

<u>DISMISSAL OF THE FORECLOSURE COMPLAINT</u>

As this Court has previously recognized in this case, (Exhibits 5 and 6) a foreclosure action in Vermont is an equitable action. <u>Merchants Bank v Lambert</u> 559 A. 2d 665. <u>Retrovest Associate, Inc. v Bryant</u>, 153 Vt.493 (1990), also applies. The Vermont Supreme Court stated the following principals that govern foreclosure actions in Vermont:

> *Plaintiff moreover ignores the fact that "foreclosure actions are equitable in nature and therefore it is proper for the court to weigh the equities of the situation. <u>Merchants Bank v Lambert, 151 Vt 204 (1989)</u> Even if the two verdicts were not consolidated and the verdict for defendant could not offset the verdict for plaintiff, a trial court would*

> nevertheless be entitled to consider the broader
> context of this lawsuit, "the existence of the situation" before
> ordering foreclosure of defendant's right of redemption.
> 153 Vt. At 500-501

In fact another case shows how clear this principle is under Vermont law.

In New England Educational Training Service, Inc v Silver Street Partnership,

156 Vt 604 (1991), the Vermont Supreme Court said:

> Plaintiff's final claim-indeed the crux of their appeal-is that
> once default of the underlying obligation had been proved, it
> was an abuse of discretion for the court to fail to foreclose
> the mortgage. Because foreclosure actions are by their nature
> equitable actions, it is proper for the court to weigh the equities
> of the circumstances in determining whether to grant foreclosure.
> (Citing Retrovest Assoc v Bryant and Merchants Bank v Lambert)
> A weighing of the equities involves judicial discretion in
> evaluating a broad range of relevant considerations. Thus
> in Johnson v Johnson, 125 Vt 470, 218 A. 2d 43 (1966) we stated:

>> "The sufficiency of the consideration, the mutuality,
>> certainty, and clarity, completeness and fairness of
>> the contract, its capability of proper enforcement by
>> decree, and the presence, or absence of any showing
>> that it is tainted or impeachable, or that its enforcement
>> would be unconscionable, are elements relevant to
>> the exercise of that discretion. If the chancellor has
>> granted or denied relief by the exercise of discretion
>> based upon such equitable considerations, the result
>> is reviewable only upon a clear and affirmative
>> abuse of discretion."

>> Id at 473. 218 A2d, at 45 (citations omitted) Although
>> Johnson was a specific performance case, its itemization
>> of the relevant considerations is equally applicable to a
>> mortgage foreclosure action." 156 Vt at 612.

Looking at Johnson analysis, it is easy to find areas where the uncontroverted facts in

this case precludes foreclosure and thus demands the dismissal of the Plaintiff's

complaint.

The first element to examine is "the mutuality, certainty, and clarity, completeness and fairness of the contract". Plaintiff claims the right to act as they did by virtue of the Mortgage Deed, namely paragraphs 2. However, a closer reading of it reveals an ambiguity. Before proceeding further, it should be noted that the Mortgage Deed was a Uniform Instrument drafted and created by the lender. *(See Exhibit A bottom ("FNMA/FHLMC Uniform instrument")* The law  provides that any ambiguities in that instrument must be construed against the drafter, namely the lender.

Paragraph 2 of the Mortgage (Exhibit A) is entitled "Funds for Taxes and Insurance." The first part of the first sentence states: *"Subject to applicable law or to a written waiver by Lender, Borrower shall pay..."* (emphasis supplied) The rest of the paragraph refers to the "Funds" in the escrow account that was established subject to the exception contained in the first sentence and how it is to be administered. As shown in the Statement of Undisputed Facts, ¶ 2, 5) the lender did agree to such a waiver. Accordingly it is clear that the provisions of paragraph 2 do not apply to this case, and even if it is not clear, the resulting ambiguity must be resolved against the Plaintiff. In fact, when considered with the provisions of Freddie Mac's servicing Guidelines Exhibit F (Section 59.1 discussed below) it is clear that Section 2 never was applicable in this circumstance except to collect for future taxes, and only when such an account was properly established by the lender. In fact, by acting as they did, Wells Fargo breached its agreement with defendants, since their action in raising the monthly payment the way they did was not authorized by the Note or Mortgage.

The second item to look at is "the presence or absence of any showing that it is tainted or impeachable". Here, we have the fact that Wells Fargo, as the servicer for Freddie Mac, totally ignored and violated the terms of its contract (servicing guide) by unilaterally raising the payment amount for the past due taxes instead of following the directive that "The Servicer must attempt to work out an arrangement with the Borrower for repayment of any advance..." (Exhibit F, Section 59.1) Plaintiff's failure to do so that occurred from the beginning has tainted this entire process, especially in light of the defendant's repeated, unsuccessful attempts to have the servicer work with them for such an arrangement.

Finally, the third element to examine is "or that its enforcement would be unconscionable." The record is clear that Wells Fargo unilaterally imposed a payment amount increase on a fixed rate loan from $716.42 to $2,478.10 per month, and then utterly refused to reasonably consider any discussions to modify it to make it affordable. Indeed, within four months of taking over the administration of the loan that had been current on principal and interest (Statement of Undisputed Facts ¶3) Wells Fargo issued a demand letter (Exhibit L, Statement of Undisputed Facts ¶16, even while ostensibly responding to defendants' inquiries (Exhibits M and N, Statement of Undisputed Facts ¶17 and 18) In fact, within three more months after that, and despite defendants' efforts to continue contact and discussions with them, this foreclosure action was commenced for which Plaintiff not only seeks recovery of the loan amount, but also past due interest and late fees caused by their actions, and other "recoverable corporate and legal fees" that more than doubles the principal amount of the loan that existed on April 1, 2007 when the loan was current.

Accordingly the facts that have been disclosed during discovery in this matter bear out that the equitable principles enunciated by the Vermont Supreme Court demand that this Court deny to Plaintiff the relief sought in the Complaint.

The First Affirmative Defense (Exhibit 3) in paragraph 17 therein, alleges that when Wells Fargo unilaterally raised the monthly payment (Exhibit E response 7) from $716.42 to $2,478.10 it did so without any legal authority and breached the agreement and caused defendants to go into default on their payments. This allegation has been decisively proven to be true. Wells Fargo's actions were also fraudulent when they failed to disclose their obligation to attempt to work out a payment arrangement and instead imposed a unilateral payment amount and when Wells Fargo refused to even discuss it when asked to do so repeatedly by defendants, the bad faith of Wells Fargo was clearly established.

The accompanying Statement of Undisputed Facts (¶6, Exhibit E responses 3 and 4) establishes that Wells Fargo was never the actual owner of the loan, but instead was merely the servicer of the loan in question. However, during the discussions and even after this litigation was commenced, Wells Fargo represented itself as the decision maker in all matters and thus misrepresented its status to defendants in a fraudulent manner. (Exhibit C, response 25). Unknown to defendants, Wells Fargo was acting merely as an agent of the actual owner, Freddie Mac. In fact, Exhibit V, where Wells Fargo's attorney in his January 16, 2008 letter denied defendants' efforts to obtain a workout agreement and said "After due consideration of your request, Wells Fargo has determined…" In his January 18 letter, also in Exhibit V, the attorney said "Wells Fargo has reviewed your

6

letter of January 17..." Finally in Exhibit V, the attorney said "...<u>Wells Fargo gave</u> <u>careful consideration to your proposal</u>..." and he concluded "The<u> only reasonable way</u> <u>for Wells Fargo to protect its interests in this matter is to proceed with the foreclosure</u>." No mention was ever made of Freddie Mac, and no indication that Freddie Mac, the real owner of the loan was even consulted in this matter. In fact, defendants only became aware that Freddie Mac was the real owner after disclosures obtained from defendants' discovery efforts. (Exhibit E, response 3 and 4)

In its actions as the agent for Freddie Mac, Wells Fargo failed to comply with the procedures and guidelines applicable to the circumstances of this particular loan that were promulgated by Freddie Mac (Exhibit F, Section 59.1) and thus Wells Fargo not only lacked the authority to undertake the unilateral actions it took in this matter, but did so to the detriment of the defendants. Section 59.1 required Wells Fargo, as a servicer to do the following:

> "***If Escrow is not collected and the Servicer discovers nonpayment of*** ***any charge otherwise payable from Escrow***, *the Servicer must contact the* *Borrower and allow the Borrower 30 days to provide proof of payment.* *The Servicer must advance funds for the unpaid charge and any* *applicable penalty if the Borrower indicates inability to make the payment* *or does not provide proof of payment within the required 30 days. **The*** ***Servicer must attempt to work out an arrangement with the Borrower for*** ***repayment of any advance and, if allowed by law, must begin to collect*** ***Escrow for future bills.***" (Emphasis supplied)

Thus Section 59.1 mandates the following procedures in cases like the one before the Court: if the servicer discovers the existence of unpaid taxes where escrow was previously waived, they must contact the borrow (defendants) and obtain a proof of payment and if not paid in 30 days, the servicer shall pay the arrears, and then <u>must</u>

attempt to work out a payment arrangement for the arrears, and open up an escrow account for the payment of <u>future bills</u>. The Court should note the mandatory language contained in Section 59.1. Instead, Wells Fargo held no discussions with defendants, but instead combined the arrears with the future taxes and raised the payment over 350%.

The Freddie Mac Guidelines have the status of a contract between Wells Fargo and Freddie Mac. (Exhibit F Section 50.1) Defendants are a third party beneficiary to that contract.

The Vermont Supreme Court has defined a third party beneficiary as follows in <u>Herbert v Pico Ski Area Management Co,</u> 180 Vt 141, 908 A.2d 1011 (2006),

> *"[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation by the promise to pay money to the beneficiary; or (b) the circumstances indicate that that the promise intends to give the beneficiary the benefit of the promised performance*
> *Whether or not a party is a third party beneficiary is based on the intention of the original contracting parties."*
> 180 Vt at 149-150 .

As shown by Exhibit F, Section 2.1, and Statement of Undisputed Facts ¶9, Freddie Mac's expressed policy (set forth in the agreement between Freddie Mac and Wells Fargo in the Servicing Guidelines) is to avoid involuntary displacement of neighborhood residents. Accordingly, the rationale for the promulgation of provisions such as Section 59.1 that governs its servicers is to protect persons such as the defendants. Thus the defendants are an intended third party beneficiary of those provisions and entitled to its protections and therefore enforcement against Plaintiff in this action.

Defendants repeatedly attempted to contact Wells Fargo (Exhibits D, document 19, and Exhibits I, J, P, R and T) to seek to reach the payment arrangements required by Section 59.1 of Freddie Mac's guidelines. Thus, despite Wells Fargo's initial disregard of the required procedures, Plaintiff was given the opportunity to correct their egregious actions, but failed to do so, and instead generated form letters, and instituted this foreclosure actions based upon an alleged default of defendants for failing to making payments they had absolutely no right to insist that defendants make.

In conclusion, there are no issues of fact that remain and it is clear that Wells Fargo committed actions that preclude it from maintaining this foreclosure action under Vermont law. Accordingly, their Complaint must be dismissed.

## SUMMARY JUDGMENT ON THE COUNTERCLAIMS

In support of summary judgment on the Counterclaims, we repeat and adopt the statements and arguments set forth above that were used to seek summary judgment to dismiss the complaint.

In addition, the actions of Wells Fargo and the undisputed facts in this matter clearly establish that Wells Fargo is liable to defendants for damages for their wrongful actions, and thus Defendants are entitled to a judgment in their favor on the issue of liability and a trial by jury to determine the extent of the damages to be awarded. As stated earlier as a basis for the dismissal of the Complaint, the Undisputed Facts establish the following:

- Wells Fargo was the servicer of the loan in question; (Exhibit E)

- The loan was actually owned by Freddie Mac; (Exhibit E responses 3 and 4)

9

- When back taxes are paid on a loan where escrow was not previously collected, the Freddie Mac guidelines required Wells Fargo to contact the defendants and attempt to arrange a repayment plan; (Exhibit F Section 59.1)

- Wells Fargo did not contact defendants to do so, but instead imposed an arbitrary monthly payment that drastically raised the payment amount from $716.42 to $2,478.10; (Exhibit E response 7)

- While doing so, no assignment of the mortgage was recorded in the land records of Bennington until July 26, 2007, well after they performed all of these steps and only days before they instituted a foreclosure action against defendants; (Exhibit 1 ¶ 11)

- The defendants contacted Wells Fargo in writing several times and on none of those occasions did Wells Fargo attempt to discuss a repayment plan for the back taxes other than the arbitrary payment amount previously imposed; (Statement of Undisputed Facts, ¶ 12, 14, 20, 21, 23, 25, 26 and referenced exhibits)

- Instead, knowing that defendants had attempted to discuss this matter with them in the spirit and letter of the Freddie Mac Guidelines, Wells Fargo instituted a foreclosure action against defendants within 4 months after defendants first sent correspondence to them and within 6 months after assuming the servicing of the loan.

All of these facts are contained in documents and disclosures made by Wells Fargo itself. They are clear and unambiguous. They also establish that Wells Fargo had no legal authority from Freddie Mac to raise defendants' monthly payment from $716.42

to $2,478.10. Thus, the contentions contained in Defendants' First Affirmative Defense and Counterclaim (¶ 16, 17) has been decisively proven and there are no triable issues of fact that exist on that issue regarding liability. In addition the contentions alleged in ¶ 25 and 26 of the Second Affirmative Defense and Counterclaim have also been decisively proven.

The Second Counterclaim alleges that Wells Fargo owes consumers (and thus the defendants) the duty of good faith and fair dealing. The Vermont Supreme Court has confirmed that requirement.

The leading Vermont case in that regard is <u>Carmichael v Adirondack Bottle Gas Co.</u>, 161 Vt 200, 635 A.2d 1211 (1993). In <u>Carmichael</u>, where Adirondack attempted to use a contractual provision to negotiate in bad faith, and to pressure a business operator to either agree to unfavorable sale terms for the business or close the operation, the Court quoted the Second Restatement of Contracts, §205 with approval:

> "[a] complete catalogue of types of bad faith is impossible but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, <u>lack of diligence and slacking off</u>, willful rendering of imperfect performance, <u>abuse of a power to specify terms</u>, and interfering with or failure to cooperate in the other party's performance.
>
> Id §205 comment d. Further, bad faith inheres in harassing demands for assurances of performance, rejection of performance for unstated reasons, willful failure to mitigate damages and abuse of a power to determine compliance or to terminate the contract. ID §205 comment e." 161 Vt at 209 (emphasis supplied)

In <u>Monahan v GMAC Mortgage Corp.</u> 179 Vt 167, 179 893 A. 2d 298 (2005) the

Vermont Supreme Court noted that the covenant of good faith and fair dealing extends to

the *"assertion, settlement, and litigation of contract claims and defenses."* (Citing

<u>Carmichael</u>.

In <u>Southface Condo Ass'n v Southface Condo Ass'n</u>, 169 Vt 243, 733 A.2d 55

(1999) the Court further enunciated the duty of good faith and fair dealing:

> *"Each party to a contract makes the implied promise that*
> *each will not do anything 'to undermine or destroy the other's*
> *rights to receive the benefits of the agreement.' 161 Vt 200, 208,*
> *636 A.2d 1211, 1216 (1993) The purpose of the implied covenant*
> *of good faith and fair dealing is to ensure that parties act with*
> *'faithfulness to an agreed common purpose and consistency with*
> *the justified expectation of the other party.' Id (citation omitted)*
> *Conduct involving 'bad faith' is characterized as violating 'community*
> *standards of decency, fairness and reasonableness." Id at 208-09,*
> *635 A.2d at1216."*

The undisputed facts show that Wells Fargo abused its power by unilaterally

raising the monthly payment more than 350%, failed to adequately respond to

defendant's attempts to find a reasonable solution, misrepresented its legal and actual

status regarding the loan (Exhibit 1 ¶ 11, Exhibit C response 25), and generally has acted

consistently in a way to seek foreclose of defendants' interest in their home. The Freddie

Mac Guidelines, to which Wells Fargo was bound contractually (Exhibit F Section 50.1),

as well as any basic understanding of "community standards of decency, fairness and

reasonableness", clearly establish the standards of good faith and fair dealing to which

Wells Fargo was expected to adhere. The disclosures by Wells Fargo conclusively

establish that Wells Fargo totally failed to comply with those standards.

Defendants contend that Wells Fargo's actions have been so egregious that liability has been established, though we understand that a trial is required to determine the amount of damages suffered by defendants for Plaintiff's actions.

Dated: Bennington, Vermont
      April 6, 2009

Howard M. Sinnott, II, defendant pro-se

Janet M. Sinnott, defendant pro-se
20 Monument Avenue
Bennington, Vermont 05201
(802) 442-0230

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

WELLS FARGO BANK, N.A.,           )
                                  )
          Plaintiff,              )
                                  )
     v.                           )
                                  )
HOWARD M. SINNOTT, II,            )          Docket No. 2:07-cv-169
JANET M. SINNOTT, UNITED          )
STATES DEPARTMENT OF JUSTICE      )
and OCCUPANTS RESIDING AT         )
20 MONUMENT AVENUE,               )
BENNINGTON, VERMONT               )
                                  )
          Defendants              )

## CERTIFICATE OF SERVICE

The undersigned, a defendant in this action, does certify that I have served a copy of the Defendant Howard M. Sinnott II and Janet M. Sinnott's Motion for Summary Judgment, Statement of Undisputed Facts, and Affidavit upon the following parties on April 6, 2009 by mailing a copy to them at the following addresses:

Megan Shafritz, Esq.
Gravel and Shea
76 St. Paul Street
P.O. Box 369
Burlington, VT 05402-0369

Melissa A. D. Ranaldo, Esq.
Assistant U.S. Attorney
P.O. Box 570
Burlington, VT 05402

Dated: Bennington, Vermont
       April 6, 2009

Howard M. Sinnott
20 Monument Avenue
Bennington, Vermont 05201
(802) 442-0230