UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Wells Fargo Bank, N.A.,
             Plaintiff,

        v.                          Civil Action No. 2:07-CV-169

Howard M. Sinnott II, Janet M. Sinnott,
United States Department of Justice, and
Occupants residing at 20 Monument Ave.,
Bennington, Vermont,
             Defendants.

## REPORT AND RECOMMENDATION
(Doc. 96)

On September 25, 2009, Plaintiff Wells Fargo, N.A. secured summary judgment in

this foreclosure action against the Defendants Howard and Janet Sinnott.[1]  (Doc. 95.)

Presently before the Court is Wells Fargo's Motion for an Award of Attorney's Fees and

Expenses pursuant to 12 V.S.A. § 4527 and Federal Rule of Civil Procedure 54(d).  (Doc.

96.)  For the reasons set forth below, I recommend that Wells Fargo's motion be

GRANTED in part and that the Court order an award of attorney's fees and expenses in

the amount of $77,656.86.

## Discussion

In Vermont, a mortgagee may recover attorney's fees incurred in the course of

---

[1] This Report and Recommendation assumes familiarity with the factual and legal background of this matter as explained in the Court's prior reports and orders, and only those facts necessary to the present motion will be mentioned here.  (Docs. 36, 39, 91, 95.)

1

prosecuting a foreclosure action when the mortgage contains an agreed upon fee shifting provision. 12 V.S.A. § 4527; *see also* Fed. R. Civ. P. 54(d). Whether and how much in fees should ultimately be awarded is within the Court's discretion. *Id.*; *Retrovest Assocs., Inc. v. Bryant*, 573 A.2d 281, 285 (Vt. 1990). In this case, all Parties agree that Wells Fargo is entitled to an award of fees pursuant to Paragraph 21 of the mortgage (Doc. 4-3 ¶ 21), but disagree as to the appropriate amount. Wells Fargo asked the Court for an award of $101,439.92 for the services of its counsel, Gravel & Shea PC (Doc. 96 at 3), but both the Sinnotts and the United States Department of Justice–a secondary lienholder of the property–have objected to that sum for various reasons. (Docs. 97, 98.)

## I. Legal Standard

The availability and calculation of attorney's fees is governed by Vermont state law.[2] *Lewis v. S.L. & E., Inc.*, 629 F.2d 764, 773 (2d Cir. 1980). Attorney's fees awarded under Vermont law must be reasonable, and trial courts have substantial discretion in deciding what constitutes a reasonable amount under the circumstances of a particular case. *Perez v. Travelers Ins. ex rel. Ames Dept. Stores, Inc.*, 915 A.2d 750, 755 (Vt.

---

[2] While it is clear that Vermont law governs whether attorney's fees may be awarded, neither Party has addressed whether Vermont or federal law should guide the Court's discretion in calculating a reasonable fee. The government appears to rely primarily on federal case law (Doc. 98 at 3), while Wells Fargo provides no guidance at all. (Docs. 96, 99.) In either case, while there are some technical differences in the standards applied in each jurisdiction (e.g., the Second Circuit refers to a "presumptively reasonable fee" rather than the "lodestar" amount), the touchstone of reasonableness with regard to both the hours billed and the billable rate is the same, and the choice between legal standards would not affect the resolution of this Motion. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186-190 (2d Cir. 2008); *Human Rights Comm'n v. LaBrie, Inc.*, 668 A.2d 659, 668 (Vt. 1995). Indeed, Vermont has specifically referred to federal law to elucidate its own standards governing the calculation of fees. *See L'Esperance v. Benware*, 830 A.2d 675, 683 (Vt. 2003) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

2006); *The Electric Man, Inc. v. Charos*, 895 A.2d 193 (Vt. 2006).

In exercising this discretion, courts should generally "begin with what is referred to as the 'lodestar' amount: 'the number of hours reasonably expended on the case multiplied by a reasonable hourly rate.' From this starting point, the court can 'then adjust [] that fee upward or downward based on various factors,' including 'the novelty of the legal issue, the experience of the attorney, and the results obtained in the litigation.'" *Perez*, 915 A.2d at 754-55 (quoting *L'Esperance v. Benware*, 830 A.2d 675, 683 (Vt. 2003)).

The standard for calculating a reasonable hourly rate is "relatively flexible," *Perez*, 915 A.2d at 755-56, and the Second Circuit has said that courts should consider all relevant case-specific variables, including those factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[3] along with the prevailing marketplace rates in Vermont for the type of work and the experience of the attorneys. *Cabrera v. Jakabovitz*, 24 F.3d 372, 392 (2d Cir. 1994); *Arbor Hill Concerned Citizens*, 522 F.3d at 191.

The Court must also determine the number of hours a reasonable attorney would have spent on the litigation, and exclude hours that were not "reasonably expended."

---

[3] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19; *see also Fine Foods, Inc. v. Dahlin*, 523 A.2d 1228, 1231-32 (Vt. 1986) (listing several case-specific factors to consider when setting a reasonable fee).

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Hours that are not reasonably expended include hours that are "excessive, redundant, or otherwise unnecessary," whether because the case is overstaffed, the skill of the attorney necessitates extra time, or for some other reason. *Id.* The Court must ensure that counsel for the prevailing party used appropriate "billing judgment," recognizing that "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.* at 433-34 (internal quotation marks omitted).

Finally, in making adjustments to requested fees, it is within the Court's discretion to deduct a percentage of the hours claimed rather than rule on every submitted time entry. *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).

## II.    Hourly Rate

Wells Fargo's counsel charged $225 per hour for its partners' time, $175 per hour for the work of an associate (which totaled only 2.2 of the 418.7 billed hours), and $100 per hour for one paralegal's work on the matter. (Doc. 96-2 at 2.) The United States contends that these rates are unreasonably high for a Vermont foreclosure action, and, in particular, that Atty. Megan Shafritz's rate of $225 per hour exceeds the Vermont rate for a partner with less than 15 years of experience. (Doc. 98 at 4.) Wells Fargo counters that both Atty. Shafritz and Atty. Craig Weatherly–who combined to bill more than 99% of the charged hours–worked at a discount below their normal hourly rate. (Docs. 96-2 at 2; 99 at 3-4.)

The Court agrees with the government that, when considering all relevant factors,

$225 per hour for the time billed by Atty. Shafritz on this matter is excessive. First, since Gravel and Shea is a Vermont law firm, the Court cannot conclude that its hourly rates exceed the prevailing market rate for Vermont attorneys as a general matter. But the question is what a reasonable client would be willing to pay for the *type of work* conducted by the attorneys in this case. *United States ex rel. Poulton v. Anesthesia of Burlington, Inc.*, 87 F. Supp. 2d 351, 356 (D. Vt. 2000) (citing *Cabrera*, 24 F.3d at 392). It is true that the affirmative defenses and counterclaims raised by the Sinnotts required work well beyond a typical foreclosure action, but this matter never became the "extraordinarily complex commercial case" Wells Fargo now claims it to be. (Doc. 99 at 4.) This litigation may have been complicated insofar as the precise contours of the Sinnott's arguments were difficult to discern, but resolving the merits of their claims did not require a particularly high level of expertise beyond the scope of mortgage and foreclosure law. In any event, this case presented nothing as novel or difficult as the First Amendment challenge to a city ordinance litigated in *White River Amusement Pub*, in which this Court recognized that fee "awards made in similar cases in Vermont have thus far peaked at $225 per hour for partners." 2008 WL 2404029, *3 (D. Vt. June 10, 2008) (unpublished).

Atty. Shafritz, who performed the bulk of the work on behalf of Wells Fargo in this matter, ably litigated this case to a victory on summary judgment, and achieved excellent results for her client. Further, I agree that the successful defense of counterclaims in this case warrants a higher hourly rate than a typical foreclosure action. But it would be unreasonable to require the Sinnotts to pay the same rate charged by partners litigating

complicated constitutional issues, particularly in light of Atty. Shafritz's 13 (as opposed to 20 or more) years of experience. *See Hargrave v. State of Vermont*, No. 2:99-CV-128, slip op. at 15-16 (D. Vt. March 24, 2005) (finding that a range of $180-$225 per hour was reasonable for a Vermont partner with 20 or more years of experience).

Accordingly, a fee award will be calculated based on a $200 per hour rate for Atty. Shafritz. Fees for time spent by Atty. Weatherly, who has 30 years of experience, will be calculated at his reduced rate of $225 per hour. Finally, time spent by Associate Attorney Paul Kearney, who has 3 years of experience, and paralegal Elizabeth Mench, will be calculated at the rates of $100 per hour and $65 per hour respectively.[4] *See Id*.

## III. Hours Reasonably Expended

The Sinnott's principal objection to Wells Fargo's proposed fee award is that Gravel and Shea spent an excessive number of hours litigating this matter, and that, given the relatively small amount owed by the Sinnotts on the underlying mortgage, no reasonable client would have authorized such substantial time expenditures. (Doc. 97.) The government echos these concerns, and argues that charging over 400 billable hours represents a lack of the requisite "billing judgment" by Wells Fargo's counsel. (Doc. 98 at 6.) The Sinnotts also argue that Wells Fargo should not recover fees incurred litigating motions that it lost, particularly its first Motion for Summary Judgment that the Court denied. (Docs. 19, 36, 39.)

---

[4] As further explained *infra*, the .1 hours billed by Gravel and Shea partner Andrew Manitsky, Esq. will be excluded from the fee award.

6

As an initial matter, Wells Fargo's fee award should not be limited by excluding attorney time spent litigating motions on which it did not prevail. Counsel for Wells Fargo "obtained essentially complete relief," and while the Sinnotts managed to defeat Wells Fargo's first summary judgment motion, Wells Fargo eventually prevailed on every claim raised in the litigation. *See Hensley*, 461 U.S. at 430-32. Further, there is no allegation that Wells Fargo brought its unsuccessful summary judgment motion in bad faith; to the contrary, the Court recognized that "[t]he facts underlying Wells Fargo's foreclosure action [were] undisputed," but denied the motion to give the Sinnotts an opportunity to litigate their counterclaims. (Doc. 36 at 7-8.) It was a reasonable strategy for Wells Fargo to seek summary judgment, and it is "entitled to an award of fees for all time reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Davis v. County of Los Angeles*, 1974 WL 180, *3 (C.D. Cal. June 5, 1975) (unpublished); *see also Hensley*, 461 U.S. at 431.

Additionally, neither the Sinnotts nor the United States argue that fees incurred defending the Sinnotts' counterclaims should be excluded from the award, such that Wells Fargo would be compensated only for time spent prosecuting the foreclosure action. *See*, *e.g.*, *Mortgage Mint Corp. v. Morgan*, 708 P.2d 1177, 1180 (Or. App. 1985) ("To obtain a judgment of foreclosure, plaintiff had to defend against defendant's . . . counterclaim. Attorney fees incurred in that defense are within the scope of the contractual provisions."); *cf. Brennan v. Kunzle*, 154 P.3d 1094, 1113 (Kan. Ct. App. 2007) (holding that mortgagee

was entitled only to attorney fees spent prosecuting foreclosure, and not to fees incurred defending mortgagor's counterclaims of fraud, fraudulent and negligent misrepresentations, and breach of implied warranties); *Fleet Bank of Maine v. Steeves*, 793 F. Supp. 18, 22 n.8 (D. Me. 1992) ("the counterclaim is related to the foreclosure action insofar as it arises from the same factual predicate . . . [t]his relationship, however, is an insufficient basis for concluding that [the defendant] must pay [the plaintiff's] attorneys' fees pertaining to its litigation against the counterclaim."). Of course, even if legally appropriate, it is another question whether such fee segregation would be practicable in this case. But given the Parties' apparent acquiescence, it is a question that need not be answered here.[5]

Next, I reject Wells Fargo's argument–made in the course of an eight page pleading that contains nary a legal citation–that "'[b]illing judgment' should have nothing to do with the determination of a reasonable fee" because Wells Fargo "had the justified expectation of recovering from Defendants what it had to pay to pursue its foreclosure action and defend against the Counterclaim." (Doc. 99 at 5.) As the Supreme Court stated while considering an award of attorney's fees under 42 U.S.C. § 1988, "[i]n the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 433-34 (quoting *Copeland*

_____

[5] Notably, though, Wells Fargo does concede that "[o]nly a very small percentage of the fees and costs incurred by Wells Fargo relate to the prosecution of its foreclosure case," and suggests that such fees were approximately between $10,000 and $15,000. (Doc. 99 at 2.)

*v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)). Thus, the appropriate inquiry is not what a party would allow its lawyers to charge with the expectation of passing all fees onto its opponent–a proposition that is both contrary to law and facially absurd–but rather "what a reasonable, paying client would be willing to pay, given that such party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted). "Litigation is expensive, but the losing party is required to pay only a reasonable amount of attorney fees, not the actual amount incurred by the prevailing party who makes no or a minimal effort to contain costs." *Taylor v. Albina Comty. Bank*, 2002 WL 31973738, *5 (D. Or. Oct. 2, 2002) (unpublished).

In this case, a reasonable paying client could agree to pay attorney fees equal to or exceeding the amount owed on the underlying mortgage note because the Sinnotts demanded an unknown quantity of damages as a remedy for their counterclaims. (Docs. 10, 36, 39.) Indeed, the Court denied Wells Fargo's first Motion for Summary Judgment precisely because there were pending counterclaims "and there [was] a plausibility of damages against Wells Fargo in excess of the amount due on the note[.]" (Docs. 36 at 9; 39.) Thus, while the mortgage fee shifting provision does not give Wells Fargo license to accrue and pass on unreasonable legal fees with impunity, the ultimate fee award must account for the defense of counterclaims in which monetary damages were sought.

Reviewing the attorney time records submitted by Wells Fargo with this framework in mind, I find several instances in which its counsel failed to exercise appropriate billing

9

judgment by charging for excessive amounts of time, and two instances in which the tasks performed should not be billed.  *See* Doc. 96-3, Shafritz Decl. ex. A.

First, between September 13, 2007 and October 9, 2007, Gravel and Shea billed nearly 25 hours in connection with Wells Fargo's first Motion for Summary Judgment. (Doc. 19.)  This motion consisted of a two page legal memorandum without a single citation to authority beyond Federal Rule 56, along with a two page statement of material undisputed facts (Doc. 20).  Similarly, Wells Fargo's Reply Memorandum in further support of its Motion (Doc. 22) contained about two pages of text and evidences no legal research beyond consulting the Court's local rules.  A summary judgment motion for foreclosure may not typically require anything more, but that does not justify billing more than 20 hours for work that could have taken half that time.

Likewise, as both the United States and the Sinnotts point out, it was excessive for counsel to bill over 130 hours in connection with the subsequent cross-motions for summary judgment. (Docs. 71, 75.)  The Sinnotts' counterclaims necessitated significant work, and Wells Fargo rationally incurred substantial attorney fees based on the threat of monetary damages.  But prevailing over what Wells Fargo now characterizes as the Sinnotts' inevitably "doomed" counterclaims did not require counsel to bill over three full-time 40 hour weeks.  (Doc. 99 at 3.)  Some of the billable time spent on these cross-motions was necessarily redundant, though it is impossible to tell from Wells Fargo's submitted billing records precisely which time entries should be discounted.  (Doc. 96-3 at 17-21.)

Finally, as discussed above, Wells Fargo's position that a fee shifting statute and contractual provision eviscerated its counsel's obligation to exercise billing judgment is of particular concern, and suggests that Wells Fargo permitted excessive billing on the expectation that it could eventually shift its fees onto the opposing party. Because the fee award must be limited to what a reasonable client would pay–with the understanding that reasonable clients want to pay the minimum amount necessary to prevail–Wells Fargo's affirmative renunciation of reasonable billing judgment also favors a reduction in billed hours.

For these reasons, the Court should impose a 10% reduction on the billable hours claimed by Wells Fargo for the work done by Attorneys Shafritz and Weatherly. *See generally New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983).

Additionally, .7 hours should be deducted from Atty. Weatherly's charges because that time was spent preparing a pay-off figure requested by the Sinnotts. *See* Doc. 96-3, Shafritz Decl. ex. A at 6. Under Vermont law, Wells Fargo was statutorily obligated to provide a statement of the amount required to satisfy the mortgage without charging a fee for providing that figure. 27 V.S.A. § 464(a). Thus the Sinnotts reasonably expected to request a pay-off figure without incurring any fees or charges. Wells Fargo was obviously free to consult counsel before providing a pay-off amount, but the resulting attorney's fees should not now shift to the Sinnotts.

Finally, it appears that Atty. Andrew Manitsky met with Atty. Shafritz for six

minutes on one occasion to discuss the case, and then never did any other work on the matter. It is difficult to imagine how those six minutes contributed to Wells Fargo's eventual success, and his .1 hour, for which counsel charged $22.50, should be excluded.

## IV. The Lodestar and Other Reductions

Having determined the reasonable hourly rates and the hours reasonably expended to charge, the "lodestar" figure is set as follows:

| | | | | |
|---|---|---|---|---|
| Atty. Shafritz | $200 per hour | 289 hours | = | $57,800 |
| Atty. Weatherly | $225 per hour | 84.7 hours | = | $19,057.50 |
| Atty. Kearney | $100 per hour | 2.2 hours | = | $220 |
| Elizabeth Mench | $65 per hour | .4 hours | = | $26 |
| | | Total | = | $77,103.50 |

Under Vermont law, however, the Court may adjust the lodestar figure based on other relevant circumstances. *Perez*, 915 A.2d at 754-55 (quoting *L'Esperance*, 830 A.2d at 683).

In this case, I find that a further 5% reduction is warranted because counsel overstaffed the matter, and consequently generated legal bills higher than if work had been properly delegated to associates with lower rates, or to staff with no hourly charge at all. *See Copeland*, 641 F.2d at 902 (permitting an across-the-board reduction to attorney's fee request). All but 2.2 of the 418.7 billed hours in this matter were spent by partners billing at the rate of $225 per hour. (Doc. 96-3, Shafritz Decl. ex. A.) As a result, Gravel and Shea charged $225 per hour for tasks such as ordering a transcript of a discovery

12

conference, conducting substantial amounts of online legal research, holding a "telephone conference with court law clerk re: recent submission," and filing court documents. *Id.* at 9, 18-21. Moreover, since the firm recorded its time in blocks rather than by each specific task, it is often impossible to tell how much time was spent on a particular task and therefore whether such time was reasonably expended. I cannot find that a reasonable client would pay the rate of $200 or $225 per hour for the performance of such tasks–particularly when the precise amount of time spent is unknowable–and these instances of overstaffing support an over-all reduction in the fee award. *See Hensley*, 461 U.S. at 434 (recognizing that "[c]ases may be overstaffed" and fee requests reduced accordingly); *Daggett v. Kimmelman*, 617 F. Supp. 1269, 1282 (D.N.J. 1985) ("It was the fee applicant's prerogative to staff every task involved in this case with partners, but that does not automatically entitle the law firm to recover 'partner rates' for everything.").

Accordingly, the amount in attorney's fees awarded to Wells Fargo should be adjusted to $73,248.33.

## V.     Prejudgment Interest

Wells Fargo also seeks prejudgment interest on the fee award, and it proposes, without explanation, $3,591.39 in interest. The government objects, and argues that prejudgment interest on contested attorney fees is inappropriate under Vermont law.

The award of prejudgment interest in this case is a matter of state law. *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998); *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 146 (1st Cir. 2009) ("It is well established that prejudgment interest is a

substantive remedy governed by state law when state-law claims are brought in federal court"). In Vermont, a prevailing party is entitled to prejudgment interest when damages are liquidated or readily ascertainable. *EBWS, LLC v. Britly Corp.*, 928 A.2d 497, 509 (Vt. 2007). Prejudgment interest may also be awarded within the discretion of the Court when the plaintiff was harmed by the delay in reimbursement. *Estate of Fleming v. Nicholson*, 724 A.2d 1026, 1031 (Vt. 1998). A "liquidated claim is one whose amount is settled or determined, especially by agreement." *Salatino v. Chase*, 939 A.2d 482, 488 (Vt. 2007); *see also Asian Imports, Inc. v. Pepe*, 633 So. 2d 551, 552-53 (Fla. Dist. Ct. App. 1994) ("Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between the parties, by an arithmetical calculation or by application of definite rules of law.")

In Vermont, it is unclear whether attorney's fees are "liquidated" before the Court determines the exact amount to be paid. The government contends that by opposing the proposed fee award, the Sinnotts and the government have forced upon the Court the task of calculating fees, and the exact quantity of fees is neither liquidated nor ascertainable prior to that calculation. (Doc. 98 at 5.) Further, the Vermont Supreme Court has also cited favorably the proposition that "for purposes of prejudgment-interest awards . . . attorney's fees are not liquidated until fixed by the trial court following discretionary

14

calculations[.]" *Salatino*, 939 A.2d at 488.[6]

Wells Fargo has not responded to these arguments, and provides no argument or authority to show that the fee award it seeks is "liquidated or reasonably ascertainable" for the purpose of prejudgment interest. (Doc. 99.) Moreover, Wells Fargo has not explained how or from where it derived its prejudgment interest figure of $3,591.39, and has not submitted any evidence or even argument to show that it has been harmed by the delay in payment of attorney fees. Under these circumstances, the Court should not award prejudgment interest, and $3,591.39 should be deducted from Wells Fargo's claimed fee award.

## VI. Expenses

The United States does not object to Wells Fargo's itemized list of expenses, and the Sinnotts' only objection is to the $2,360.48 claimed for the cost of online legal research. (Doc. 97 at 3.) For litigation that spanned over two years and ultimately required significant briefing, I find that such expense on legal research is reasonable, and the Court should add the full amount of claimed expenses ($4,408.53) to Wells Fargo's fee award.

---

[6] The extent to which this observation by the Vermont Supreme Court controls the present case is unclear, because the court distinguished its analysis in *Salatino* from a case in which, as here, "the fees at issue had already been incurred and billed; although the parties disputed the precise amount, it was susceptible to calculation by the court." *Salatino*, 939 A.2d at 488. In *Salatino*, by contrast, the parties were merely speculating about a quantity of attorney fees yet to be incurred. *Id.*

## **Conclusion**

For the reasons set forth above, I recommend that the Court GRANT in part Wells Fargo's Motion for an Award of Attorney Fees and Expenses (Doc. 96), and award Wells Fargo attorney's fees and expenses in the amount of $77,656.86.

Dated at Burlington, in the District of Vermont, this 10th day of December, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72(a), 72(b), 73; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).